■ JON INNIS, Respondent, v CITY OF NEW YORK, Appellant, and ANITA SCHWARTZBERGK et al., Respondents. CITY OF NEW YORK, Third-Party Plaintiff-Appellant, v ANITA SCHWARTZBERGK et al., Third-Party Defendants-Respondents. — Judgment, Supreme Court, New York County (Rossetti, J.), entered on March 16, 1982, affirmed, without costs and without disbursements. Concur — Kupferman, Sandler, Asch and Kassal, JJ.

Murphy, P. J., dissents in a memorandum as follows: At about 6:30 P.M. on January 16, 1977, plaintiff Jon Innis was walking his dog on the south side of 71st Street between Columbus Avenue and Broadway. At the time, plaintiff was wearing, *inter alia,* prescription sunglasses and shoes with leather soles. It had snowed that entire day: approximately one-half inch of snow had fallen. On January 15, 1977, one fifth of an inch of snow had accumulated; five inches had accumulated on January 14, 1977. Thus, close to six inches of snow lay on the sidewalk as the plaintiff walked his dog. The snow had not been shoveled from the sidewalk in front of 134 West 71st Street. However, there were "patches" in the snow made by footprints. At this location, plaintiff slipped and fell to the ground. His left eye struck a metal spike that was protruding from the ground near a tree. The plaintiff eventually lost vision in that eye. The testimony of plaintiff as to the cause of his fall is conflicting and confusing. At his examination and at trial, he occasionally states that he slipped on "dirty ice". There is evidence in the record that approximately three inches of snow accumulated on January 10, 1977. There is also an indication that traces of snow fell on January 4 and January 7, 1977. The plaintiff confirmed that he had seen "dirty ice" at this site for a period of two to three weeks before the incident. On certain other occasions in his testimony, the plaintiff states that he fell upon snow. The jury was permitted to predicate liability against the City of New York on the alternative theories that it was negligent (i) in failing to clear the sidewalk of snow, and (ii) in allowing a dangerous condition to exist in the form of the metal stake. The trial court instructed the jury that the city could not be held liable for failing to clear the snow that had fallen on January 16, 1977. The jury was merely permitted to consider the city's possible negligence with relation to prior snowfalls and ice that had formed from those prior snowfalls. In a general verdict, the jury found that the plaintiff was 60% contributorily negligent and that the city was 40% negligent. Total damages were set at $450,000. Hence, the plaintiff was awarded $180,000 against the city. The evidence shows that about six inches of snow had fallen in the 48-hour period before the occurrence. During this time frame, the Department of Sanitation had concentrated its manpower on removing the snow from primary and secondary street arteries. Snow removal from sidewalks was the department's lowest priority. Under such a circumstance, the City of New York may not be held responsible, as a matter of law, for failing to clear the snow accumulations dating from January 14, 1977. Similarly, the city may not be held responsible for ice that might have formed after those snowfalls. (*Valentine v City of New York*, 86 AD2d 381, affd 57 NY2d 932; 5C Warren's Negligence, Snow, Ice and Sleet, § 4.24[9].) However, there was proof that "dirty ice" might have formed at the injury site during the period prior to January 14, 1982. Plaintiff was thus presented with the burden of demonstrating that he fell on the "old ice", for which recovery would be permitted, rather than "new ice", for which recovery could not be had as a matter of law. The plaintiff's testimony reveals that he was unsure whether he fell on snow or ice.

Plaintiff's uncertainty is quite understandable because he was walking through the snow at night while wearing sunglasses. Undoubtedly, it was difficult for him to see whether he was stepping on snow or ice. Furthermore, even if it were assumed that he slipped on "dirty ice", the dirtiness of the ice would not conclusively establish that it was "old" rather than "new" ice since the ice might have been discolored within the 48-hour period before the occurrence. Upon the record, the jury was asked to speculate as to whether plaintiff fell on snow or ice. That was a task in itself. Assuming the jury found that he fell on ice, it was then required to guess whether that ice was two days old or several weeks old. A jury may not be permitted to predicate liability on such tenuous evidence. The first cause based upon the city's failure to clear the snow and ice must be dismissed as a matter of law. (*Foley v City of New York,* 95 App Div 374.) Even if it were conceded that plaintiff established a prima facie case with regard to that first cause, recovery should be entirely precluded thereunder by reason of plaintiff's contributory negligence. First and foremost, the plaintiff was negotiating the snow-laden sidewalks while wearing sunglasses. Obviously, the sunglasses prevented him from seeing any dangers present. Had the plaintiff not been wearing sunglasses, he might have seen this ice patch which he had allegedly observed on prior occasions. Secondly, the plaintiff was walking in shoes with leather soles. Again, he should have worn footwear that would have provided him with a certain amount of traction. Third, plaintiff became even more susceptible to a fall from the fact that he had subjected himself to the movements of his dog upon the leash. For the foregoing reasons, plaintiff's contributory negligence should have barred his recovery upon the first cause as a matter of law. With regard to the second claim that the metal stake constituted a public nuisance, sufficient evidence was presented to submit it to the jury (*Bland v Kaufman,* 249 App Div 842). The plaintiff's contributory negligence, in precipitating his own fall, should have been considered by the jury in allocating responsibility under that second claim. However, in this general verdict, the jury may have improperly promulgated responsibility against the city under the first cause. Consequently, the judgment may not stand and a new trial must be ordered in accordance herewith. (*Hamilton v Presbyterian Hosp. of City of N. Y.,* 25 AD2d 431, app dsmd 17 NY2d 719.)